**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

ALAN WAGNER,

           *Plaintiff,*

v.

BOARD OF EDUCATION, HODGEMAN
COUNTY PUBLIC SCHOOLS, UNIFIED
SCHOOL DISTRICT 227
Serve: Christina Cohoon, Clerk
401 Douglas
Jetmore, KS 67854

and

HODGEMAN COUNTY PUBLIC
SCHOOLS, UNIFIED SCHOOL
DISTRICT 227
Serve: Superintendent Robert Reed
401 Douglas
Jetmore, KS 67854

and

BRENDA SHELTON
In her individual and official capacities
Serve: Christina Cohoon, Clerk
401 Douglas
Jetmore, KS 67854

and

JESSE JONES
In his individual and official capacities
Serve: Christina Cohoon, Clerk
401 Douglas
Jetmore, KS 67854

Civil Action No.
JURY TRIAL DEMANDED

and

**MICHAEL COSSMAN**
In his individual and official capacities
401 Douglas
Jetmore, KS 67854

and

**MITCHELL DURLER**
In his individual and official capacities
401 Douglas
Jetmore, KS 67854

and

**ERIN WASHBURN**
In her individual and official capacities
401 Douglas
Jetmore, KS 67854

and

**COLE WILSON**
In his individual and official capacities
401 Douglas
Jetmore, KS 67854,

*Defendants*.

## VERIFIED COMPLAINT

COMES NOW, Plaintiff ALAN WAGNER ("Plaintiff" or "Mr. Wagner"), by and through his undersigned attorney, and hereby brings this verified Complaint against the above-named Defendants, BOARD OF EDUCATION OF HODGEMAN COUNTY PUBLIC SCHOOLS, UNIFIED SCHOOL DISTRICT 227; HODGEMAN COUNTY PUBLIC SCHOOLS, UNIFIED

SCHOOL DISTRICT 227; BRENDA SHELTON; JESSE JONES; MICHAEL COSSMAN; SCOTT CURE; MITCHELL DURLER; ERIN WASHBURN; and COLE WILSON; based upon knowledge, information and a reasonable belief derived therefrom, as follows:

## INTRODUCTION

1.      All facts alleged in this Complaint are verified as true by Plaintiff by affidavit. *See* Affidavit of Mr. Wagner, attached hereto and incorporated herein as **Exhibit A**.

2.      This is a civil rights action to redress the deprivation by Defendants of rights secured to Plaintiff by the First Amendment and Fourteenth Amendment to the United States Constitution.

3.      Plaintiff is an upstanding citizen, public servant, father of ten, husband of a current member of the Board of Education of USD 227, and was banned by Defendants from USD 227 property, circa December 9, 2025.

4.      The reason provided by Defendants for this ban was due to Plaintiff's speech delivered to Defendants at the December 1, 2025 meeting of Defendant Board of Education of Hodgeman County Public Schools, USD 227, which all individual Defendants attended.

5.      Defendants set forth in writing this basis for the ban in question.

6.      Plaintiff's speech at the December 1, 2025 meeting of Board of Education of Hodgeman County Public Schools, USD 227 was protected by the First Amendment to the United States Constitution, and undoubtedly concerned matters of significant public concern.

7.      Defendants retaliated against Plaintiff by imposing the aforementioned ban from USD 227 property under threat of arrest, and also by seeking to have Plaintiff criminally prosecuted, and also by seeking to harm Plaintiff's employment, all because Defendants disliked Plaintiff's protected speech at the aforementioned Board of Education meeting.

8.      Defendants' actions in this matter are in plain violation of Plaintiff's rights under the First Amendment.

9.      Defendants' actions were openly retaliatory against Plaintiff for his exercise of his First Amendment rights to free speech and to petition the government.

10.     Defendants' actions in imposing the property ban on Plaintiff came without any semblance of due process, including any notice that Defendants were seeking to impose such ban, nor any mechanism by which Plaintiff could challenge this unjust and purely illegal ban.

11.     Plaintiff seeks immediate injunctive relief, along with damages to be proven at trial in this matter.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as it arises under the Constitution and laws of the United States and presents a federal question, and pursuant to 28 U.S.C. §1343(a)(4), in that it seeks to secure equitable, monetary, and other relief under an Act of Congress, specifically 42 U.S.C. §1983, which provides a cause of action for the protection of civil rights.

13.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201-2202, by Federal Rules of Civil Procedure 57 and 65, and by the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

14.     This Court has the authority to award Plaintiffs' attorney's fees and costs associated with this action pursuant to 42 U.S.C. §1988 and other applicable law.

15.     Venue is proper within the Wichita, Kansas judicial district (Dodge City division), pursuant to 28 U.S.C. 1391(b)-(c) because Plaintiff resides within this judicial district and division,

Defendants are located within this judicial district and division, and the events giving rise to Plaintiffs' claims occurred in this judicial district and division.

16.     Wherefore Plaintiff requests this action be heard in the Wichita, Kansas judicial district.

## PARTIES

17.     Plaintiff Alan Wagner is a citizen of the United States and currently resides in of the State of Kansas, county of Hodgeman.

18.     Defendant Board of Education of Hodgeman County Public Schools, Unified School District 227 (hereinafter, "Board"), is a public school district board of education located in Hodgeman County, Kansas.

19.     Defendant Hodgeman County Public Schools, Unified School District 227 (hereinafter, "USD 227"), is a public school district located in Hodgeman County, Kansas.

20.     Defendant Brenda Shelton was, at the time of the illegal actions in this matter, President of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

21.     Defendant Jesse Jones was, at the time of the illegal actions in this matter, Vice-President of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

22.     Defendant Michael Cossman was, at the time of the illegal actions in this matter, a Member of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

23. Defendant Scott Cure was, at the time of the illegal actions in this matter, a Member of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

24. Defendant Mitchell Durler was, at the time of the illegal actions in this matter, a Member of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

25. Defendant Erin Washburn was, at the time of the illegal actions in this matter, a Member of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

26. Defendant Cole Wilson was, at the time of the illegal actions in this matter, a Member of the Board, and was partially or wholly responsible for the injuries to the Plaintiff as set forth below.

## ALLEGATIONS OF FACT

27. Plaintiff Alan Wagner is a resident of Hodgeman County, Kansas, and has been for the past fourteen years.

28. Plaintiff is employed by the Kansas Highway Patrol as a technical trooper.

29. Plaintiff and his wife, Jazmin Wagner, have ten children, with five of their children attending USD 227 schools; the Wagners are also deeply involved in the care of their nephew, who lives next door to the Wagners and also attends a USD 227 school.

30. While the Wagner family have always been positive and contributing members of their rural community, in 2025, Plaintiff's wife, Mrs. Wagner, decided to seek election to the Board.

31.     Plaintiff's wife, Mrs. Wagner, ran for a seat on the Board to serve her community and to help create positive change in the District for all of its students, including her own children.

32.     Plaintiff's wife, Mrs. Wagner, has deep family roots in Hodgeman County, extending back to the African American community in Morton City; Mrs. Wagner's grandparents were the last family to reside in Morton City.

33.     Plaintiff's wife Mrs. Wagner won an at-large seat on the Board, in the November 2025 election, and she was slated to begin her tenure as a Board member on the second Monday in January 2026.

34.     While Plaintiff and his wife have always been proud to send their children to USD 227 schools, starting in late October 2025, they became very deeply concerned regarding a situation unfolding in the classroom in which one of their daughters attends fifth grade.

35.     On or about October 29, 2025, Plaintiff's daughter and her peers were informed by the school's other fifth-grade teacher that their class's teacher had been arrested over the prior weekend for domestic violence, that the teacher was innocent, and that was why the teacher was not present at school that day.

36.     Upon her return home, Plaintiff's daughter informed Plaintiff and Mrs. Wagner of this information, whereupon Plaintiff and his wife quickly confirmed the aforementioned arrest through an internet search of publicly accessible arrest records from the Ford County Sheriff's Office.

37.     When Plaintiff's daughter informed Plaintiff and Mrs. Wagner of the arrest information that had been shared at school that day, Plaintiff's daughter further informed her parents that the teacher in question had shared information with the fifth-graders that was not appropriate, including regarding abusive relationships the teacher had been in over the years.

38.     Plaintiff's daughter further informed Plaintiff and Mrs. Wagner that the teacher's boyfriend had apparently visited the fifth-grade classroom unannounced as part of his job duties working for a third-party that provides services for USD 227, the teacher had asked the individual to leave, the individual declined to do so, and then the teacher raised her voice to again ask this person to leave, and this person would not do so until he was allowed to play a game connected to his job with the children, and once that happened, this individual then left the building.

39.     Upon information and belief, the aforementioned individual is the same person named in the Ford County Sheriff's incident report relating to the arrest of the fifth-grade teacher.

40.     Plaintiff and Mrs. Wagner were, understandably, very deeply troubled by this information imparted by their fifth-grade daughter; Plaintiff and Mrs. Wagner were also quite upset and perplexed that they and the other parents of the fifth-graders in the relevant class had not been informed by elementary school and/or USD 227 leadership of this situation.

41.     As such, the very next morning, October 30, 2025, Plaintiff and his wife, Mrs. Wagner, came to the elementary school to meet with the Superintendent of USD 227, to discuss the significant concerns Plaintiff and Mrs. Wagner had regarding this situation, and to ask why parents had not been notified of this important and troubling information.

42.     The Superintendent's response was that he "did not think" to notify the parents.

43.     Almost immediately after this meeting, the Superintendent prepared and sent a letter to the parents of the fifth grade students in the relevant class, stating that a "change" had been made in the children's classroom "due to a law enforcement investigation involving a district teacher," that the teacher was on leave, that no further information could be shared due to privacy laws, and that the children were the district's priority. A copy of this letter is attached hereto and incorporated herein as **Exhibit B**.

44.     The very next day, less than 24 hours later, the Superintendent sent another letter to the same set of fifth-grade parents, stating that he wanted to "share good news that we look forward to welcoming your child's teacher back sometime in the near future, as the law enforcement investigation has concluded and no concerns or charges remain." A copy of this letter is attached hereto and incorporated herein as **Exhibit C**.

45.     This sequence of events was disturbing and bewildering for Plaintiff and his wife, Mrs. Wagner.

46.     Plaintiff and Mrs. Wagner then met with the Superintendent of USD 227 on Friday October 31, 2025 to discuss their significant concerns about this situation, primarily their concerns for the safety and wellbeing of their ten-year-old daughter.

47.     In response, the Superintendent stated that the teacher in question was the only qualified candidate to apply for the relevant fifth-grade teaching position and that it would be virtually impossible to replace her.

48.     Toward the end of this October 31 meeting, Plaintiff and Mrs. Wagner asked the Superintendent if they could address the Board at its meeting set for November 3; the Superintendent responded in the affirmative and told Plaintiff and Mrs. Wagner that they would have as much time as they needed to address their concerns before the Board.

49.     As such, Plaintiff and Mrs. Wagner then attended the November 3, 2025 meeting of the Board.

50.     This was the first Board meeting Plaintiff and Mrs. Wagner had attended.

51.     Plaintiff, with his background in law enforcement, was surprised and alarmed to see the way the meeting room was set up in terms of layout of tables and chairs in relation to the windows and doorway into the meeting room.

52.     Plaintiff believed there to be significant security issues with the arrangement of the meeting room, and this greatly concerned him, given that his wife and the mother of their ten children was running for the Board and would be attending meetings in that room if she won her election.

53.     Plaintiff also had longer term security concerns, as USD 227 held an active shooter training forum which involved Hodgeman County Sheriff's Department, Hodgeman County Fire Department, Hodgeman County EMS, and others; however, despite being the law enforcement officer who lives closest to the elementary school and hospital, Plaintiff was not invited to this forum.

54.     Plaintiff made a mental note of the security issues at the Board meeting and resolved to raise his security issues and safety concerns at a later Board meeting.

55.     When Plaintiff and his wife were given a chance to speak at the November 3, 2025 Board of Education meeting, they were limited to only five minutes total, which contradicted what they had been told by the Superintendent only days prior.

56.     Plaintiff and Mrs. Wagner raised their significant concerns about the situation involving their daughter's fifth-grade teacher in their time comments to the Board, both in open and closed executive session.

57.     The Board gave no indication that it was going to take any steps to resolve the serious concerns raised by Plaintiff and his wife with regard to the items they discussed in their comments.

58.     On November 4, 2025, the very next day after Plaintiff and Mrs. Wagner expressed their significant concerns about their daughter's fifth-grade teacher to the Board, the USD 227 Superintendent sent the parents of the children in the relevant fifth-grade class (including Plaintiff

and his wife), another letter stating that the teacher in question would be back in the classroom the following Monday, November 10; the letter further stated that "the other party involved" in the domestic disturbance situation, meaning the teacher's boyfriend, was not to be allowed in the elementary school building moving forward, regardless of what organization/business he represents, and that there would be an optional parent meeting early on the morning of Friday November 7 for the Superintendent to answer any questions that parents may have. A true and accurate copy of this letter is attached hereto and incorporated herein as **Exhibit D**.

59.     Plaintiff and Mrs. Wagner then attended the November 7 meeting, along with other concerned parents of fifth-grade students in the relevant class.

60.     The Superintendent stated that the teacher would be returning to work the following Monday and that he had no concerns about the situation moving forward.

61.     Parents at the meeting, including Plaintiff and Mrs. Wagner, pushed back and asked why the teacher would not be left on a leave of absence until a full investigation into the arrest situation could take place, and in response, the Superintendent stated that enough information had been gathered to allow the teacher back in the classroom, but that he could not provide such information to the assembled parents "due to policy."

62.     Parents at the meeting noted that they had never been provided with any such policy, and to the understanding of the assembled parents, no such policy even existed for USD 227 at that moment, as USD 227 had apparently not ever adopted formal district-wide policies to that point.

63.     The Superintendent stated that because the returning teacher and her boyfriend had an "issue" with domestic violence, then the boyfriend would no longer be allowed in the

elementary school and his photo would be posted in the school's office so that staff there who were in charge of admitting visitors would be able to identify and exclude him.

64.     Plaintiff and Mrs. Wagner were entirely dissatisfied with this sequence of events and felt very alarmed at how USD 227 was handling the situation; they were very concerned with the safety and wellbeing of their ten-year-old daughter.

65.     Plaintiff's ten-year-old daughter informed Plaintiff and Mrs. Wagner that she was scared to go to school on Monday November 10, and she was still scared when she returned home after school that day.

66.     Long ago, Plaintiff and his wife decided to make their home in Hodgeman County in order to raise their children in a more traditional setting in order to preserve the innocence of their children, and USD 227 leadership allowing these very adult issues to be forced upon their innocent ten-year-old was extremely upsetting to their family.

67.     Plaintiff's ten-year-old daughter was so upset by this situation that she began sleeping in her parents' room at night and writing in her journal to ask God to protect her and her classmates at school.

68.     Continuing to be troubled by how the Superintendent and USD 227 had handled this situation with their daughter's fifth-grade teacher, Plaintiff and his wife submitted complaints to USD 227 against the Superintendent and the fifth-grade teacher in question, on or about November 20, 2025; to this day, neither Plaintiff nor Mrs. Wagner have ever received any updates as to the status of these complaints that were submitted under the newly adopted District Policy KN.

69.     At the same time, things deteriorated in the classroom of Plaintiff's ten-year-old daughter, including very unsettling events involving the teacher in question, which caused

Plaintiff, Mrs. Wagner, their child, and other parents of children in the relevant fifth-grade class very deep concern.

70.    Upon information and belief, the parents of another fifth-grade student filed a police report against the teacher in question due to an incident in the classroom that occurred circa November 21, 2025.

71.    The leadership of USD 227 did nothing to ameliorate the situation in the fifth-grade classroom, and so on December 1, 2025, Plaintiff and Mrs. Wagner filed additional complaints with USD 227 against the Superintendent and the teacher in question.

72.    Plaintiff and Mrs. Wagner also learned that other parents had filed complaints with USD 227 and with the Kansas State Department of Education regarding the fifth-grade teacher, including by the parents who had filed a police report against the teacher in question; additional complaints have been submitted by other parents against the teacher in question as recently as mid-January 2026, clearly indicating this is an ongoing concern amongst members of Plaintiff's community.

73.    The issues and concerns with the fifth-grade teacher in question and the events in that classroom were widely discussed within the small Hodgeman County community in which Plaintiff and his family reside, as numerous other community members were quite concerned with this situation.

74.    As such, Plaintiff and Mrs. Wagner then attended the December 1, 2025 meeting of the Board.

75.    As of that date, Mrs. Wagner had been declared the winner of her election and was slated to take her seat as a Member of the Board at its January 12, 2026 meeting.

76.    At the December 1, 2025 meeting, Plaintiff and Mrs. Wagner both addressed the Board, in both open and closed executive session.

77.    First, Mrs. Wagner addressed her serious safety concerns regarding allowing a teacher with domestic violence charges to be allowed at school and teach her daughter and other children; Mrs. Wagner indicated her belief that this teacher should be terminated.

78.    Mrs. Wagner further stated that USD 227 needed to have clear policies and procedures in place for the faculty and staff of USD 227, since none at that time apparently existed.

79.    Next, Plaintiff addressed the Board regarding his serious concerns about the fifth-grade teacher in question and the safety of his daughter and the other children in that fifth-grade classroom.

80.    Plaintiff further noted that he had filed formal complaints against the Superintendent and the fifth-grade teacher, and he likewise referenced the police report that other parents had apparently filed against the teacher, with Plaintiff discussing his strong safety concerns about allowing this teacher to work directly with the kids in the classroom.

81.    Plaintiff then addressed his concerns with the safety and security of the meetings of the Board, including regarding the layout of the meeting room.

82.    Plaintiff expressed his concerns with the fact that half of the Board members were sitting in chairs with their backs turned to the sole public entryway into the room, which a disgruntled person could take advantage of.

83.    Plaintiff further noted that he is the law enforcement officer that lives closest to the school yet never in fourteen years had he been invited to attend any of the active shooter trainings that USD 227 apparently holds every year.

84.    Plaintiff expressed his concerns about the timeline for a police response to an active shooter situation at the school and that he, as the closest law enforcement officer, would need to respond to such a situation should it ever unfold.

85.    Plaintiff made these comments of deep public concern because he has five children and a nephew who attend USD 227 schools; moreover, his wife had just been elected to serve as a Member of the Board, and Plaintiff and his wife have an infant son that would likely be attending these meetings with Mrs. Wagner, as well.

86.    The safety of his family members and the other children who attend USD 227 schools is Plaintiff's paramount concern, and he raised his concerns during a meeting of the Board, seeking to cause the Board to take positive action to address these concerns.

87.    These were significant matters of deep public concern and unquestionably speech protected by the First Amendment to the United States Constitution; driving Plaintiff's concerns that he expressed at the Board meeting was the long list of horrible atrocities that have occurred in school settings over the past thirty years in our country, which weighed heavily on Plaintiff's mind when seeking to address safety and security shortcomings with the Board at the December 1, 2025 meeting.

88.    Simply put, there are few matters of greater public concern in our country than school safety and security, and Plaintiff had every right to raise his concerns on this topic to the Board and ask that body to change course, without fear of reprisal and retaliation.

89.    Similarly, the concerns that Plaintiff and Mrs. Wagner raised about the fifth-grade teacher discussed herein were valid, reasonable, and widely held in their community; the comments of Plaintiff and his wife were not in any fashion inappropriate or threatening.

90.     Prior to Plaintiff and Mrs. Wagner speaking at the December 1, 2025 meeting of the Board, another speaker addressed the Board to note that USD 227 was apparently out of compliance with Kansas state requirements and needed to immediately implement policies and procedures for staff and employees, as well as multiple violations by USD 227 as determined by an audit by Kansas State Department of Education.

91.     After the remarks of Plaintiff and Mrs. Wagner to the Board concluded, Defendant Members of the Board did not address any of the concerns raised by Plaintiff and his wife.

92.     Defendant Board members likewise gave no indication that they had any "problems" with the comments made by Plaintiff and his wife: Plaintiff's remarks to the Board were not interrupted by the Board Members; Plaintiff and his wife were not asked to leave the meeting; no security or law enforcement were called to the meeting; and Plaintiff and his wife were not informed that the Defendants were considering taking any kind of formal adverse action against Plaintiff due to his remarks at the meeting.

93.     In short, Plaintiff delivered protected speech to an elected public body, in a public forum, about matters of deep public concern, there was no "commotion" during or after his remarks, and he was not told at this meeting that his remarks were inappropriate, nor was any kind of law enforcement called to escort Plaintiff from the Board meeting; there was no hint that anything was amiss due to Plaintiff's speech to the Board.

94.     Soon after Plaintiff and his wife concluded their remarks, at approximately 8:30PM, they left the December 1, 2025 meeting of the Board, of their own volition, in order to return to their children at their home, as December 1 was a school night.

95.     Over the next eight days, Plaintiff and Mrs. Wagner did not receive any notice of any concerns about Plaintiff's speech at the December 1 meeting of the Board, nor did Plaintiff

and Mrs. Wagner receive any notice that the Board had called a "special meeting" for December 8, 2025.

96.    On the evening of December 9, 2025, after Plaintiff had completed his duties that day in his role as a trooper for the Kansas Highway Patrol, a Hodgeman County Sheriff's deputy knocked on the door of the home of Plaintiff and Mrs. Wagner.

97.    The sheriff's deputy stated he was there to serve a "no trespass" order upon Plaintiff from the Board.

98.    The letter, which was signed "Hodgeman County USD 227 School Board," stated that "Due to the events on December 1, 2025, you are hereby notified that you are prohibited (without verbal permission from the School Board or Superintendent) from being at school, on school property and from attending any and all school sponsored events for one calendar year, from the date of this letter." A true and accurate copy of this "no trespass" letter is attached hereto and incorporated herein as **Exhibit E**.

99.    The letter continued, stating in relevant part that "Because of your behavior on 12/01/2025 the Board of Education of USD 227 Hodgeman County hereby prohibits you from being on school property or attending any school activity for one calendar year.  A copy of this letter has been forwarded to law enforcement." *Id.*

100.    The letter closed by noting that if Plaintiff was "found on school property" then law enforcement would be called and the Board would file a trespass complaint against Plaintiff; in other words, Plaintiff would be subject to arrest if he entered onto USD 227 property. *Id.*

101.    The letter provided no process by which Plaintiff could challenge or appeal this decision and order; it also did not identify what "behavior" by Plaintiff Defendants found

objectionable, and again, the only "behavior" in which Plaintiff engaged at the December 1, 2025 Board meeting was his speech to the Board and the assembled audience. *Id.*

102.    This was the first time Plaintiff was informed that such a decision had even been contemplated by the Board, let alone voted upon and approved.

103.    The Sheriff's deputy serving the no trespass order told Plaintiff and Mrs. Wagner that four of the seven Members of the Board voted to approve the letter and the "no trespass" decision, and that these same four members stated that they wanted Plaintiff charged with a criminal threat and that the Board of Education of Hodgeman County Public Schools, Unified School District 227 would be filing a formal complaint against Plaintiff with his employer, the Kansas Highway Patrol.

104.    Plaintiff has never been charged with any criminal offense relating to his attendance and behavior/remarks at the December 1, 2025 Board meeting.

105.    The identities of the four Members of the Board who purportedly voted to impose the "no trespass" order on Plaintiff and take the other adverse actions against him in retaliation for his speech at the December 1, 2025 Board meeting have never been disclosed to Plaintiff nor Mrs. Wagner, and no roll call vote is available from the Board.

106.    Plaintiff and Mrs. Wagner came to learn through community contacts that the Board had voted to hold an "emergency" meeting on Monday December 8, 2025, apparently for the sole purpose of seeking to ban Plaintiff from USD 227 property, due to his speech at the December 1, 2025 Board meeting.

107.    Neither Plaintiff nor Mrs. Wagner—who was a Member-elect of the Board—were made aware of this "secret" meeting, were not invited to attend it, were not told Plaintiff was facing a ban from USD 227 property, and in fact, Mrs. Wagner was coaching the fifth-grade girls

recreational basketball team at the USD 227 elementary school (with Plaintiff in attendance) at the time of this "emergency" secret meeting of the Board.

108. The Board's webpage provides links to the Agendas and Meeting Minutes for each of the Board's meetings, with the exception of the "special" meeting the Board surreptitiously called on December 8, 2025—no Meeting Minutes are available for this meeting, in plain violation of Board Policy BCBH (requiring meeting minutes to be taken, and such minutes "shall clearly reflect all motions voted on by the board, including board actions taken on motions which did not pass"). *See* https://usd227.community.diligentoneplatform.com/Portal/MeetingInformation.aspx?Org=Cal&Id=86, last visited March 17, 2026.

109. Plaintiff and his family were shocked by the letter setting forth the Board's "no trespass" order and the information from the Sheriff's deputy who served the letter.

110. Plaintiff and his family immediately understood the actions of the Defendants to be pure, unequivocal, bad faith retaliation against the Wagner family for daring to make their legitimate concerns known at a meeting of the Board and asking that body to change course.

111. Prior to the decision of Defendants to impose the "no trespass" order on Plaintiff due to his speech at the December 1, 2025 Board meeting, Plaintiff had regularly attended school functions and dropped off his children and picked them up from school, all without incident and certainly without any threatened arrest and prosecution of Plaintiff.

112. Understanding that Defendants were threatening to harm his employment, which is the main source of income for his family, Plaintiff immediately contacted his supervisor with the Kansas Highway Patrol to inform him of these developments.

113.    On December 22, 2025, leadership of the Kansas Highway Patrol sent Plaintiff a letter indicating that he will apparently not face any disciplinary actions due to the no trespass order from the Board, but that because the Board and USD 227 are political organizations, Plaintiff is to abide by the no trespass order until such time it is lifted, and when that occurs, Plaintiff is to furnish to his employer any such letter from lifting the ban.

114.    The KHP entitled and characterized its December 22, 2025 letter to Plaintiff as a "Letter of Caution," indicating some danger for Plaintiff moving forward, due solely to the actions of the Defendants.

115.    In addition to the harm that Defendants' unlawful and retaliatory no trespass order caused to Plaintiff's employment, the no trespass order has caused and continues to cause significant harm to Plaintiff and Mrs. Wagner and their ten children.

116.    Significant coordination from both Plaintiff and Mrs. Wagner is required to handle transportation and attendance at each of their children's activities, including dropping the children off at school and picking them up, as well as extracurricular activities, virtually all of which occur on USD 227 property.

117.    Due to Defendants' unlawful and retaliatory actions, Plaintiff is now barred from dropping his children off and picking them up at school, as well as from attending his children's events at school, such as the Christmas play that Plaintiff and his entire family were forced to miss due to the unlawful no trespass order imposed by Defendants.

118.    This situation is untenable for Plaintiff and his family, given that Mrs. Wagner is the mother of an infant, and there are times when she is indisposed caring for their baby and simply cannot leave home to the needs of the infant, meaning Plaintiff must be able to participate in the transportation of his older children and attend their school-based functions.

119. The unlawful actions of Defendants have not only harmed Plaintiff and his wife, these illegal actions have harmed the Wagner children and their access to their education, a truly deplorable outcome caused solely by Defendants' retaliation against Plaintiff in violation of the law.

120. Plaintiff is likewise now barred from attending meetings of the Board and participating in the political process, meaning his right to free speech and to petition the government for redress of grievances has been preemptively restrained and denied him.

121. The unlawful actions of Defendants in this matter have placed Plaintiff in a false negative light; Plaintiff has had to explain to his children that he is not a criminal in response to his children's questions regarding why their dad cannot come to school anymore and why he is banned from coming on school property, and this has thus impacted his own children's view of him as a father and a person, another truly detestable outcome caused solely by Defendants' blatantly unlawful actions in this matter.

## **<u>ALLEGATIONS OF LAW</u>**

122. 42 U.S.C. § 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or law of the United States. To establish a valid claim under §1983, the Plaintiff must demonstrate that Defendants, acting under color of state law, deprived him of a right secured either by the Constitution or laws of the United States.

123. Defendants are "persons" for purposes of the claims set forth in this complaint, as that term is used in 42 U.S.C. §1983.

124.    Defendants are "state actors" and all of the conduct of Defendants, as set forth in this Complaint, constitutes conduct "under color of state law" as that phrase is used in 42 U.S.C. §1983.

125.    For the purposes of Plaintiff's constitutional claims, Plaintiff at all times relevant owned a Constitutionally recognized right to free speech and right to petition the government, pursuant to the First Amendment to the Constitution, and a liberty interest in his Constitutional right to free speech and to address the Board, each of which are protected by the Fourteenth Amendment to the Constitution. Each of these rights is constitutionally protected both by the substantive and procedural safeguards of the Due Process clause of the Fourteenth Amendment.

126.    All of the actions of Defendants as set forth in this complaint were done with malice and with reckless indifference to the constitutional rights of Plaintiff.

## COUNT I—VIOLATION OF FIRST AMENDMENT, PURSUANT TO 42 U.S.C. § 1983 (AS TO ALL DEFENDANTS)

127.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 126 above and incorporate those allegations herein by reference.

128.    At all times relevant herein, Plaintiff had the right to freedom of speech and expression under the First Amendment to the United States Constitution. U.S.C. Amend. 1.

129.    Plaintiff has been deprived of these rights by the actions of Defendants in imposing the "no trespass" order against Plaintiff circa December 8, 2025, threatening him with arrest if he were to come onto USD 227 property.

130.    Defendants, in their individual and official capacities, violated Plaintiff's rights to free speech and freedom of expression by way of punishing Plaintiff for exercising those rights in a meeting of the Board 7.

131.    Defendants have admitted in writing that they punished Plaintiff, in the form of the "no trespass order," due solely to Plaintiff's "behavior on 12/01/2025" at the meeting of the Board; Plaintiff's only "behavior" at that meeting was making a speech to the Board regarding two items of significant public concern—first, the status of a fifth-grade teacher who had recently been arrested for domestic violence, suspended from her teaching duties at the school, reinstated, with further serious concerns then developing within a few weeks of that reinstatement; and second, the security and safety of the meetings of the Board, which Plaintiff's wife would soon be attending as an elected Member of that body.

132.    Purely as a result of this Constitutionally protected speech, Defendants unlawfully imposed the punitive "no trespass" order on Plaintiff, threatening him with arrest if he were to come onto USD 227 property, with Defendants likewise seeking to have Plaintiff criminally charged for his remarks at the December 1, 2025 Board meeting, and, upon information and belief, filing a complaint against Plaintiff with his employer, thereby causing Plaintiff significant harm, including with his employer, with his family, and within his community.

133.    Defendants' unlawful actions have likewise operated to prevent Plaintiff from exercising his rights to free speech, free expression, and to petition the government for redress of grievances, at meetings of the Board and more broadly in interacting with USD 227 personnel moving forward, an exercise of prior restraint by Defendants of those rights enjoyed by Plaintiff pursuant to the First Amendment.

134.    Defendants intentionally, willfully, wantonly, oppressively, and maliciously have violated Plaintiff's rights to free speech, free expression, and to petition the government for redress of grievances, in their appalling actions in this matter.

135.   Due solely to Defendants' illegal actions, Plaintiff has suffered significant harm, including reputational damage, severe emotional distress and anguish, and adverse consequences at his workplace, among other harms endured.

136.   Plaintiff is entitled to compensatory damages in this matter, including punitive damages, from Defendants, because of their intentional disregard for Plaintiff's clearly established right to free speech, free expression, and to petition the government for redress of grievances.

137.   Plaintiff is likewise entitled to equitable relief, in the form of an injunction requiring Defendants to rescind the nakedly illegal "no trespass" order imposed on Plaintiff.

138.   Wherefore Plaintiff requests the relief as set forth below in the prayer for relief.

### COUNT II—FIRST AMENDMENT RETALIATION, PURSUANT TO 42 U.S.C. § 1983 (AS TO ALL DEFENDANTS)

139.   Plaintiff repeats and realleges the allegations in paragraphs 1-138 above and incorporates those allegations herein by reference.

140.   The First Amendment to the United States Constitution prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.

141.   Any form of official retaliation for exercising one's freedom of speech constitutes an infringement of that freedom.

142.   Criticism of government is at the very center of the Constitutionally protected area of free discussion.

143.   In this matter, Plaintiff engaged in a Constitutionally protected activity at the December 1, 2025 meeting of the Board, through his speech on matters of significant public concern and interest, relating to both the status of a fifth-grade teacher that had been a topic of significant concern in the small community in which Plaintiff resides, and to the safety and security of the meetings of the Board, with Plaintiff offering his thoughts as to the weaknesses of the layout

of the meetings of the Board, offered in light of Plaintiff's wife soon taking a seat as a Member of the Board and against the backdrop of the terrible history of school-related violence in our country, with Plaintiff's comments shaped by his law enforcement background.

144.    Simply put, in his speech to the Board at its December 1, 2025 meeting, Plaintiff was offering criticism of the government and the decisions this governmental body, the Board, USD 227, and its employees, had made and were making about issues of significant public concern.

145.    In response to Plaintiff's Constitutionally protected activity of delivering a critical speech at the December 1, 2025 meeting of the Board, Defendants imposed a "no trespass" order on Plaintiff, banning him from USD 227 property for an entire year and threatening him with arrest if he were to come onto USD 227 property, severely impacting Plaintiff and his family, and impugning his reputation.

146.    Defendants also employed a local Sheriff's deputy to serve this "no trespass" order on Plaintiff, further serving as an effort to intimidate Plaintiff due to his protected speech.

147.    Defendants also threatened Plaintiff with criminal prosecution due to his protected speech.

148.    Upon information and belief, Defendants also contacted Plaintiff's employer to lodge a complaint against him due to his protected speech.

149.    These actions by Defendants would chill a person of ordinary firmness from continuing to engage in the activity of criticizing the Board, its Members, and USD 227, as a one-year ban from all USD 227 property, under threat of arrest, would necessarily create logistical problems for any family that has children attending USD 227 schools, would create fear of negative

employment and reputational consequences, and would necessarily bar individuals from being allowed to speak at meetings of the Board.

150. Similarly, the threat of criminal prosecution and loss of employment, as a consequence for engaging in protected speech, would chill a person of ordinary firmness from continuing to engage in the activity of criticizing the Board, its Members, and USD 227.

151. These adverse actions taken by Defendants were wholly motivated as a response to Plaintiff's exercise of Constitutionally protected conduct of criticizing the Board, its Members, and USD 227, in his speech at the December 1, 2025 meeting of the Board.

152. To wit, Defendants explicitly admitted in writing that their action in imposing the "no trespass" order on Plaintiff was solely due to his speech to the Board at its December 1, 2025 meeting. *See* Exhibit E.

153. Similarly, the Sheriff's deputy who served the "no trespass" order on Plaintiff on December 9, 2025, informed Plaintiff and his family that Defendants wanted Plaintiff criminally prosecuted for a "criminal threat" and would be filing a complaint with Plaintiff's employer, due solely to his protected speech at the December 1, 2025 meeting of the Board.

154. Because each of the individual Defendants were part of the Board that engaged in the unlawful acts described herein, each is liable to Plaintiff in this matter.

155. Due solely to Defendants' illegal actions, Plaintiff has suffered significant harm, including reputational damage, severe emotional distress and anguish, and adverse consequences at his workplace, among other harms endured.

156. Plaintiff is entitled to compensatory damages in this matter, including punitive damages, from Defendants, because of their intentional disregard for Plaintiff's clearly established

right to be free from retaliation for exercising his Constitutional rights to free speech, free expression, and to petition the government for redress of grievances.

157.    Plaintiff is likewise entitled to equitable relief, in the form of an injunction requiring Defendants to rescind the nakedly illegal "no trespass" order imposed on Plaintiff.

158.    Wherefore Plaintiffs request the relief as set forth in the prayer for relief.

### COUNT III: VIOLATION OF PROCEDURAL DUE PROCESS, PURSUANT TO 42 U.S.C. § 1983 (AS TO ALL DEFENDANTS)

159.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 158 above and incorporates those allegations herein by reference.

160.    At all times relevant herein, Plaintiff had a right under the Due Process clause of the Constitution not to be deprived of life, liberty, and property, without proper due process of law. U.S.C. Amend. 14.

161.    Plaintiff possessed and possesses a protected liberty interest in his free speech right to access the public forum of Board meetings and make his thoughts, including his criticisms of Defendants, known.

162.    Before Defendants could attempt to revoke Plaintiff's right to attend and speak at such Board meetings, Defendants were required to provide Plaintiff due process, namely notice and the right to be heard before any such revocation of Plaintiff's rights were taken from him.

163.    Defendants secretly voted to impose the "no trespass" order on Plaintiff, prohibiting him from attending and speaking at future Board meetings for an entire year, without providing Plaintiff any notice, any right to be heard, nor any right to appeal or otherwise challenge this unjustified and unlawful outcome once it was imposed by Defendants.

164.    Defendants have not cited to any policy by which this sanction was imposed on Plaintiff, nor have Defendants cited to any policy that Plaintiff allegedly violated that necessitated the sanction imposed on Plaintiff.

165.    Defendants intentionally, willfully, wantonly, oppressively, and maliciously violated Plaintiff's procedural due process rights.

166.    Due solely to Defendants' illegal actions, Plaintiff has suffered significant harm, including reputational damage, severe emotional distress and anguish, and adverse consequences at his workplace, among other harms endured.

167.    Plaintiff is entitled to compensatory damages in this matter, including punitive damages, from Defendants, because of their intentional disregard for Plaintiff's clearly established right to procedural due process before Plaintiff's protected liberty interest in his right to free speech and to attend Board meetings to exercise that right could be taken away by Defendants.

168.    Plaintiff is likewise entitled to equitable relief, in the form of an injunction requiring Defendants to rescind the nakedly illegal "no trespass" order imposed on Plaintiff.

169.    Wherefore Plaintiffs request the relief as set forth in the prayer for relief.

### **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Alan Wagner prays for judgment against all Defendants on Counts I, II, and III, as follows:

A.  Declare that Defendants' actions in imposing a "no trespass" order on Plaintiff, threatening him with arrest, seeking his criminal prosecution, and lodging a complaint against him with his employer, violated the First and Fourteenth Amendments to the Constitution and was unlawful retaliation against Plaintiff for exercising his First Amendment rights;

B. Declare that Defendants had no actionable basis for engaging in these actions toward Plaintiff;

C. Immediately issue a temporary restraining order, preliminary injunction, and permanent injunction, ordering Defendants to rescind the "no trespass" order in question, notify local law enforcement of such rescission, and notify Plaintiff's employer of such rescission;

D. Award Plaintiff compensatory damages against the proper Defendants in an amount exceeding the jurisdictional minimums of this Court;

E. Award Plaintiff punitive damages against the proper Defendants for their willful, wanton, oppressive, malicious conduct towards Plaintiff, as set forth herein;

F. Award Plaintiff his costs and reasonable attorney's fees, plus interest, pursuant to 42 U.S.C. § 1988.

G. Retain jurisdiction over this action for the enforcement of its orders and final judgment; and

H. Grant any other and further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, Kansas as the place of trial.

Respectfully submitted:

**DUNCAN LAW FIRM, LLC**

s/ Andrew M. Duncan
Andrew M. Duncan
D. Kan. #78468
Attorney for Plaintiff Alan Wagner
Duncan Law Firm, LLC
4601 E. Douglas Ave., Ste. 357
Wichita, KS 67218
Phone: (785) 979-7361
Email: ad@studentrightslawyers.com